UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENNIS CASTRO individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:15-cv-00559-TWP-DML ) |
| LLOYD & MCDANIEL, PLC a Kentucky limited liability company, PCA ACQUISITIONS V, LLC a Delaware limited liability company, | ) ) ) ) ) ) |
| Defendants. | ) ) |
| PHILIPPS & PHILIPPS, LTD., | ) ) |
| Interested Party. | ) |

**ENTRY ON PETITION FOR ATTORNEY'S FEES AND EXPENSES**

This matter is before the Court on Interested Party Philipps & Philipps, Ltd. ("Philipps") Petition for Payment of Attorney's Fees and Expenses, under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. (Filing No. 62.) On February 26, 2016, the Court entered a final Order approving the class action settlement between the Plaintiffs Dennis Castro ("Mr. Castro") on behalf of himself and all others similarly situated, and Defendants Lloyd & McDaniel, PLC ("L&M"), and PCA Acquisitions V, LLC ("PCA") (collectively, "the Defendants"). Philipps served as Class Counsel in this matter and requested that the Court award it $72,302.50 in fees and $3,104.96 in expenses, as well as $6,686.50 in fees to Taft, Stettinius and Hollister, LLP ("Taft"). Defendants filed a Response in Opposition to the amount of fees requested. (Filing No. 66.) On April 22, 2016, Class Counsel filed their Reply in Support of Petition for Payment of Attorney's Fees and Expenses, in which they assert that Class Counsel

should be awarded the total amount of $84,124.46 in fees and $3,410.50 in expenses to Philipps & Philipps, Ltd., and $27,783.00 in fees to Taft Stettinius & Hollister LLP; for time spent preparing and defending the fee petition. (Filing No. 71.) Having considered the Petition, Response in Opposition, and the Reply, the Court issues the ruling below.

## I. BACKGROUND

PCA operates a nationwide debt collection business, in which PCA buys large portfolios of defaulted consumer debt. *Id.* at 2. PCA then employs other collection agencies, such as L&M, to collect defaulted debt. *Id.* It is unclear at what point PCA acquired Mr. Castro's defaulted credit card debt. (Filing No. 19 at 2.) However, PCA admits that it did. *Id.* On September 19, 2014, L&M sent Mr. Castro a debt collection letter on behalf of PCA. (Filing No. 20 at 3.) Thereafter, on April 8, 2015, Mr. Castro filed a complaint bringing suit against the Defendants under the FDCPA. (Filing No. 1.) That same date, attorneys David J. Philipps, Mary E. Philipps, and Angie K. Robertson, with the Chicago area law firm of Philipps and Philipps, Ltd., each filed their Notice of Appearance on behalf of Mr. Castro. (Filing No. 3, Filing No. 4, and Filing No. 5.)

In his suit, Mr. Castro alleged that the Defendants violated the FDCPA by failing to effectively identity the current creditor, in violation of section 1692g(a)(2) and alleged that the Defendants' statement "[b]ecause of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater" was false, deceptive or misleading, in violation of section 1692e. *Id.* at 5.

On October 28, 2015, Mr. Castro, as an individual and on behalf of all others similarly situated, entered into a settlement agreement with the Defendants. (Filing No. 59 at 1.) As part of the settlement agreement, the Defendants agreed to discontinue the practices alleged in Mr. Castro's Complaint, to pay Mr. Castro $1,000.00 as a class representative, and to pay $21,550.00

2

to the class. *Id.* On February 26, 2016, this Court approved the settlement agreement. *Id.* Unfortunately, the parties were not able to reach an agreement for attorney's fees and expenses, so Mr. Castro filed the motion currently before the Court.

In order to handle the petition for attorney's fees and expenses, Philipps, as class counsel, employed the legal services of Taft law firm. Initially, Philipps' attorney's fees and expense petition was for a total amount of $75,407.46 in fees and expenses. (Filing No. 63 at 10.) However, Mr. Castro incurred an additional $6,686.50 in fees from Taft for preparing the expense petition. *Id.* Subsequently, the Defendants filed a twenty-seven page objection to the fees petition, which caused Mr. Castro's attorneys to incur additional expenses and fees. (Filing No. 71 at 1.) Thus, Mr. Castro now petitions this Court to grant an award of $84,124.46 in fees and $3,410.50 in expenses to Philipps and an award of $27,783.00 in fees to Taft. *Id.* at 19. Together, Mr. Castro has requested a total amount of $115,317.96 in his attorney's fees petition.

## II. LEGAL STANDARD

Prevailing plaintiffs under the FDCPA are entitled to an award of costs and reasonable attorney's fees as determined by the court. 15 U.S.C. § 1692k(a)(3); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995). In proving the reasonableness of attorney's fees, the burden rests on the party seeking the fees award. *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). However, if the petitioner of attorney's fees meets his or her burden, then the opposing party bears the burden of providing evidence that demonstrates why a lower rate is essential. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). The same burden applies to the market rate component of the lodestar calculation. The burden of proving the market rate is on the petitioner, however, a petitioner's own affidavit is insufficient to establish a reasonable market rate. *Id.* Instead, a petitioner can meet his or her burden if the petitioner presents third

party affidavits from similar attorneys who charge similar rates for comparable work. *Spegon*, 175 F.3d at 556. In the alternative, the petitioner can provide evidence of clients paying him or her a similar rate for similar work in the relevant market. *Id.*

Because the fees amount is not mechanically linked to the amount of the plaintiff's award, *Eddleman v. Switchcraft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991), the lodestar method of calculating the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate is an appropriate and helpful determination. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). This method may be adjusted by the court to "reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.,* 574 F.3d 852, 856-57 (7th Cir. 2009). In this manner, the lodestar method produces a fees award that is presumptively reasonable, while still deferring to the district court's "greater familiarity with the case", regarding the reasonable number of hours expended on the case. *See Pa. v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 565 (1986); *see also Gastineau,* 592 F.3d at 748 (stating that a "highly deferential" version of the abuse of discretion standard applies when reviewing a district court's fees award).

Once the lodestar figure is calculated, by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, the Seventh Circuit permits district courts to adjust the amount up or down after considering various relevant factors, including:

> the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal services properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fees; whether the fees are fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases.

*Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 n.1 (7th Cir. 2003). Determining the amount of a fees and expense award is a matter that rests within the sound discretion of the trial court. *See In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015).

In evaluating the *reasonable time* expended for the lodestar calculation, courts will consider similar factors used to reduce the total lodestar amount. For example, when assessing the reasonableness of time expended, courts look at "the time and labor required, the novelty and difficulty of the issues, the legal skill required, the reputation of the attorneys, the time burdens imposed by the client or the circumstances, and awards in similar cases". *Owens v. Howe*, 365 F. Supp. 2d 942, 947 (N.D. Ind. 2005).

In evaluating the *reasonable rate* for the lodestar calculation, courts consider what the petitioner's attorneys charge for similar work in the relevant market. *Bratton v. Thomas Law Firm, P.C.*, 943 F. Supp. 2d 897, 902 (N.D. Ind. 2013). In particular, courts consider what lawyers with similar abilities and experience charge their clients for similar work in the same market. *Owens*, 365 F. Supp. 2d. at 947. Nonetheless, courts generally presume the attorney's billing rate for comparable work to be a reasonable rate. *Id.*

### III. DISCUSSION

As an initial matter, on April 25, 2016, the Defendants filed a Motion for Leave to File Sur-reply. (Filing No. 72.) Therein, the Defendants requested the opportunity to reply to additional fees being petitioned by Mr. Castro. However, the Defendants stated that such objections would be similar in nature to the objections raised in their initial brief. The Defendants petition this Court to be allowed to raise objections to the additional fees sought by Mr. Castro, if the Court would find it useful. The Court finds that the similar information would add no value to the analysis

regarding the additional fees being petitioned by Mr. Castro. Therefore, the Court finds a surreply unnecessary and the motion for leave (Filing No. 72.) is **DENIED.**

The Philipps firm is comprised of three attorneys, David J. Philipps (Managing Partner), Mary E. Philipps (Partner), and Angie K. Robertson (Associate). (Filing No. 62-1 at 8.) In Mr. Philipps' declaration, he asserts that his firm charges $575.00 per hour for his work, $565.00 per hour for Ms. Philipps' work, $275.00 per hour for Ms. Robertson's work, and $185.00 per hour for the work of their paralegals. *Id.* at 19. According to the expense report submitted by the Philipps firm, all three attorneys and two paralegals contributed to the litigation of Mr. Castro's case. (Filing No. 62-2.)

Additionally, two partners and one associate from the Taft law firm worked on the fees petition, resulting in additional legal expenses. (*See* Filing No. 63 at 7.) The Taft attorneys that worked on the fees petition were Samuel Hudson (Partner), Tracy Betz (Partner), and Tammara Porter (Associate), billing $435.00 per hour, $360.00 per hour, and $295.00 per hour, respectively. *Id.* For the reasons stated below, the Court finds the rates and some of the time expended by Mr. Castro's attorneys to be reasonable.

A. **The rates charged by the Philipps and Taft firms were reasonable.**

The Defendants argue that the rates sought by Mr. Castro's attorneys are unreasonable and that Mr. Castro has failed to satisfy his burden of establishing the market rate for his attorneys. (Filing No. 64 at 2.) The Court is not persuaded.

Mr. Philipps is the senior partner in the Philipps firm with over 25 years of experience, and has litigated in numerous consumer protection cases. (Filing No. 63. At 5.) Mr. Philipps has been approved as class counsel in twenty-nine contested cases, and has been appointed as class counsel

for settlements in another 190 cases. *Id.* Ms. Philipps is the co-founder of the Philipps firm. *Id.* Ms. Robertson is an Associate at the Philipps firm, and has over five years of legal experience. *Id.*

In support of the market rates claimed by the Philipps firm, Mr. Castro cites to past decisions in this District, including this one, in which courts have found comparable rates claimed by the Philipps firm to be reasonable. (*See* Filing No. 63 at 6; Filing No. 71 at 5-6.) While the Seventh Circuit has held that fees assessed in similar cases by other courts are not binding, the Seventh Circuit stated that they must be considered and must not be ignored. *See Spegon*, 175 F.3d at 556.

Mr. Castro cites to *Paulus v. Pride Acquisitions.*, to support the reasonableness of the rates sought by the Philipps firm. (Filing No. 63 at 6.) *Paulus* involved violations of the FDCPA. No. 1:12-cv-1433-LJM-MJD (S.D. Ind. Oct. 2, 2013). In the decision, the court found the market rates of $505.00 per hour for Mr. Philipps, $495.00 per hour for Ms. Philipps, and $165.00 per hour for paralegals, to be reasonable. *Id.* (order granting final approval of class settlement). Another decision cited by Mr. Castro in support of the rates sought is *Baker v. Nations Recovery Ctr.*, which also concerned violations of the FDCPA. In that decision, the undersigned approved, the market rates of $505.00 per hour for Mr. Philipps, $495.00 per hour for Ms. Philipps, and $165.00 per hour for paralegals were again found to be reasonable. *See Baker v. Nations Recovery Ctr.*, 1:13-cv-0071-TWP-DML (S.D. Ind. Nov. 15, 2013) (order granting final approval of class settlement).

In addition, and perhaps the most compelling case cited by Mr. Castro, is the decision *Wood v. State Collection Serv.*, which also dealt with allegations of FDCPA violations. Therein, the court approved the exact same rates being requested in this petition. *See Wood v. State Collection Serv.*, No. 1:15-cv-0475-SEB-DKL (S.D. Ind. Jan. 29, 2016) (order granting final approval of class settlement). In that decision, the court found the market rate of $575.00 for Mr. Philipps, $565.00

7

for Ms. Philipps, $275.00 for Ms. Robertson, and $200.00 for paralegals, to be reasonable. *Id.* The Court finds the past decisions to be highly persuasive regarding the reasonableness of the rates requested by Mr. Castro.

In addition to the past decisions supporting the rates for Mr. Castro's attorneys, Mr. Castro also submitted three third party affidavits to support the reasonableness of the rates. Specifically, Mr. Castro submitted affidavits from Keith J. Keogh ("Keogh"), and Daniel A. Edelman ("Edelman"), both nationally recognized consumer protection attorneys. (Filing No. 63 at 6.) Additionally, Mr. Castro obtained an affidavit from Irwin B. Levin ("Levin"), who is a nationally recognized authority on class action and consumer protection and is based out of Indianapolis, Indiana. *Id.*

In their affidavits, Keogh and Edelman both stated that they believed the rates sought by the Philipps firm were reasonable and consistent with the market. (Filing No. 62-4 at 22; Filing No. 62-5 at 8.) Keogh has a national practice, which includes work under the FDCPA, and he stated that his market rate would be around $661.00 per hour. (Filing No. 62-4 at 23.) Indeed, Keogh stated that the rate being requested by the Philipps firm should be higher than requested, given the firm's national prominence. *Id.* Similarly, Edelman's consumer law practice is also national in nature, and he stated his market rate was $700.00 per hour. (Filing No. 62-5 at 5.) Thus, he concluded the rates being requested by the Philipps firm, were reasonable and in line with the market. *Id.* at 8. Both Keogh and Edelman are members of the bar for the Southern District of Indiana, and claim to know the relevant market well. (Filing No. 62-4 at 2; Filing No. 62-5 at 2.) Additionally, both have tried cases, or have cases pending, in Indiana. *Id.*

The third affidavit by Levin, indicated that Levin was a nationally recognized class-action attorney. (Filing No. 62-3 at 1-3.) While Levin did not include his market rate, he swore under

perjury of law to be familiar with the market rate, and that in his belief the rates being sought by the Philipps firm were reasonable. *Id.* at 4-5. Given that Levin's practice is based out of Indiana, the Court finds his affidavit persuasive. Additionally, Levin stated that he reviewed the efficiency, market rates, and time that the Taft attorneys were seeking. *Id.* Levin concluded that the rates Taft was seeking were reasonable for the market. *Id.* As Mr. Castro correctly points out, the hourly rates for the Taft attorneys are lower than those of the Philipps attorneys. (Filing No. 71 at 17.) As such, Mr. Castro argued, because the Philipps hourly rates are reasonable, the lower Taft hourly rates are also reasonable. This Court agrees.

The Defendants argue that the prevailing rates for the Indianapolis market should apply because that is where the case was litigated. (Filing No. 64 at 8.) In this regard, the Court notes the previous decisions in this district finding comparable rates by the Philipps firm to be reasonable, persuasively establishing that the Philipps firm is requesting the forum market rate. Additionally, the three affidavits of attorneys practicing in Indiana also lend support to the conclusion that the forum market rate is being applied.

Nonetheless, even if the rates being sought by the Philipps firm are higher than that of the prevailing rate in Indianapolis, it does not automatically warrant a conclusion that the fees award is unreasonable. Instead, the Seventh Circuit has stated that an attorney can charge higher than the average of the community if he or she possesses qualities that "command a premium". *See Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003) (this could be a short cite). In this action, the Court notes that the complaint was made under the FDCPA, which is a national statute; the Philipps firm has obtained national prominence in litigating claims under the statute; and the Philipps attorneys are experienced class-action attorneys. In fact, local Indianapolis counsel referred Mr. Castro's case to the Philipps firm because they felt that the Philipps firm was

better equipped to handle the matter. (Filing No. 71 at 5.) Therefore, even if the rates sought by the Philipps firm are higher than the Indianapolis average, given the specialty of the firm, the complexity of the FDCPA, and the experience of the Philipps firm, the rates are reasonable.

For the aforementioned reasons, the Court finds that the rates sought by the Philipps and Taft firms are reasonable.

**B.** **Mr. Castro has demonstrated the reasonableness of only part of the time expended by his attorneys, thus the Court finds it necessary to adjust the attorney fees accordingly.**

Next, Defendants argue that the time expended by the Philipps firm was unreasonable. (Filing No. 64 at 9.) The Defendants present multiple challenges to the reasonableness of time expended by Mr. Castro's attorneys which the Court will examine in turn.

**1.** **The amount of time expended to draft court documents by Mr. Castro's attorneys was reasonable given the existence of two separate defendants, each having their own counsel.**

The Defendants argue the time expended drafting documents by Mr. Castro's attorneys was unreasonable given the availability of form or template documents. (Filing No. 64 at 9.) In particular, Defendants contend that document templates from previous cases were utilized by Mr. Castro's attorneys in this matter. (Filing No. 64 at 10.) Defendants cite to *Lemieux v. Guy*, where the court found it unreasonable for an attorney with Mr. Philipps' expertise to spend 2.3 hours drafting a complaint, and 3.1 hours drafting Rule 26 disclosures, proposed interrogatories, document requests, and case management plan. *See* No. 1:06-cv-0941-DFH-WTL, 2006 WL 3626555 at *4 (S.D. Ind. Nov. 20, 2006). Relying on that decision, the Defendants contend that this Court should find the 4.1 hours spent drafting similar documents by Mr. Philipps to be unreasonable. The Court is not persuaded.

In Mr. Castro's case there are two defendants. Despite the availability of templates, the amount of time expended to draft the pleadings and court documents is not unreasonable. In contrast, in the *Lemieux* case, there was only one defendant, and thus, Mr. Philipps had only one set of documents to address. *Id*. In Mr. Castro's case, there were two answers and affirmative defenses, two sets of discovery responses, and different positions regarding the liability of the separate defendants. (Filing No. 71 at 7.)

Another distinction between Mr. Castro's case and the *Lemieux* case is the position the Defendants took. Specifically, in the *Lemieux* case, the defendants settled before there was even an initial pre-trial conference. *See* 2006 WL 3626555 at *4. In Mr. Castro's case, the Defendants denied any culpability, mounted affirmative defenses, fought class-certification, and required a deposition of Mr. Castro. (Filing No. 71 at 8.) Therefore, the Court believes the time Mr. Philipps spent on drafting the relevant documents was reasonable.

### 2. Mr. Castro's attorneys can recover for travel expenses to Indianapolis since their presence was required.

The Defendants argue that Mr. Castro's attorneys should not be compensated for travel time between Indianapolis and Chicago because they had local counsel. (Filing No. 64 at 11.) The first contention of travel time by the Defendants stems from Mr. Castro's attorneys traveling into Indianapolis for Mr. Castro's deposition hearing. *Id.* However, the Court notes that such deposition was conducted at the request of the Defendants. (Filing No. 71 at 16.) The Defendants argue that local counsel could have handled the matter and cite to *Kaylor-Trent v. Bonewicz* in support. *See* 916 F. Supp.2d 878, 889 (C.D. Ill. Jan. 9, 2013) (reducing out of town attorney's hours expended for travel time from Chicago to Springfield where local counsel could have handled the case). In *Kaylor-Trent*, there was local counsel who was competent to handle the matter and thus there was no need for the out of town attorneys to be present. *Id.* In Mr. Castro's

11

case, he argues persuasively that his local counsel are not experts in class action suits, and thus the presence of the Philipps firm attorneys was required for the deposition. Therefore, the Philipps firm can recover for the expenses incurred as a result of traveling for Mr. Castro's deposition.

The Defendants' second contention regarding travel time comes from the Philipps firm attorneys having to travel to Indianapolis for a fairness hearing, which was held on February 25, 2016. (Filing No. 60.) The Defendants again cite to *Kaylor-Trent* for support. *Id.* However, in *Kaylor-Trent*, the court did not allow the travel expenses because the attorneys were given the option to conduct the bench trial through video technology. *Kaylor-Trent*, 916 F. Supp.2d at 889. In contrast, the Court notes that Mr. Philipps requested to appear telephonically but such request was not granted by the Court. (Filing No. 71 at 16.) Because Mr. Philipps was required to appear in person, the Philipps firm can recover for travel expenses for the fairness hearing.

**3. The Court finds some of the time spent by Mr. Castro's attorneys to be clerical or administrative and therefore the fees award is reduced accordingly.**

In regards to their third challenge, the Defendants argue that much of the time billed by Mr. Castro's attorneys is not recoverable because the tasks were clerical or administrative in nature. (Filing No. 64 at 12.) The Court notes that the Seventh Circuit and courts in this District have found a variety of tasks to be administrative in nature, and therefore not proper for an attorney or paralegal to bill for. *See e.g.*, *Spegon*, 175 F.3d at 553 (finding that updating a case-list, calendar, and conferences with paralegal discussing communication with court's minute clerk to be unbillable legal services); *Young v. Accounts Recovery Bureau, Inc.*, No. 1:11-CV-255-WTL-DKL, 2012 WL 3764014 at 4. (S.D. Ind. Aug. 8, 2012) (finding retrieving and preparing documents for mailing and traveling to court to file documents to fall in the administrative clerical category, *but* finding electronic filing to be billable).

The Defendants list seventeen particular entries that they find to be unbillable. (Filing No. 64 at 13.) However, the Court will address only the entries that it finds unrecoverable.

The Court finds the following entries to be clerical or administrative based on the language used in the entry description:

1. Entry stating "calendar same" on 7/18/2015 for .2 hours at $575.00/hr;
2. Entry stating "email same to opposing counsel" on 9/10/2015 for .2 hours at $565.00/hr;
3. Entry stating "Locate materials re: settlement needed for deposition preparation and assemble same" on 9/28/2015 for .5 hours at $565.00/hr;
4. Entry stating "work with staff on class notice mailing" on 11/18/2015 for .3 hours at $575.00/hr;
5. Entry stating "Copy and fold class notice, print out and stuff envelopes and return envelopes for class mailing" on 11/18/2015 for 3 hours at $200.00/hr;
6. Entry stating "work on assembling materials" on 1/11/2016 for .2 hours at $565.00/hr;
7. Entry stating "email same to S. Hodson" on 3/4/2016 for .2 hours at $565.00/hr.

The Court concludes that these seven tasks for which the Philipps firm is billing were better suited for a legal secretary. *See Spegon*, 175 F.3d at 553. If no secretary was available, it still does not justify billing at an attorney or paralegal rate to accomplish these administrative tasks. The Philipps firm contends that the tasks required legal judgment, but they do not elaborate why the tasks required legal expertise. Therefore, the listed entries will be discounted from Mr. Castro's attorney's fees petition. The total amount discounted for these seven entries is $1,514.00.

### 4. **The Philipps firm has not engaged in "top heavy" staffing.**

The Defendants also allege that Mr. Castro's attorneys engaged in "top heavy" staffing. (Filing No. 64 at 13-14.) The Court notes that the Philipps firm consists of three attorneys and three paralegals. (Filing No. 62-1 at 8.) One of the three attorneys at the Philipps firm is an Associate while the other two are Partners. *Id.* The Court finds that, given the complexity of the issues involved with the FDCPA, the Partners properly handled the bulk of the work. In particular,

as the Philipps firm notes, the Associate or Paralegals would have required supervision which would have resulted in less efficiency. The Court agrees. Additionally, the Court has already discounted for the time billed that did not reasonably require higher expertise.

> 5. **Mr. Castro's attorneys did not engage in excessive billing within the firm.**

In their fifth challenge, the Defendants argue that Mr. Castro's attorneys engaged in excessive billing. *Id.* Specifically, the Defendants contend that the Philipps firm should not be compensated for the "duplicative" billing entries made when attorneys within the firm consulted with one another. However, the Court notes that such consultation is often a necessary practice when it benefits the client, by having more than one attorney handle the matter. Similarly, other courts have found that consultation between attorneys ensures that no facts go overlooked. *See, e.g., Bohen v. City of E. Chi.*, 666 F. Supp 154, 157 (N.D. Ind. 1987.) Accordingly, the Court finds the entries by the Philipps firm resulting from conferences between attorneys to be recoverable, as it was in the best interest of Mr. Castro.

> 6. **Mr. Castro's attorneys are not entitled to recover for vague or erroneous billing entries.**

Next, the Defendants argue that some entries on the Philipps firm's billing statement should be disallowed for vagueness. (Filing No. 64 at 20.) The Court agrees with the Defendants in regards to the following entries:

1. Entry stating "update records on debt buyer liable for attorney" on 6/9/2015 for .4 hours at $575.00/hr;
2. Entry stating "Get letter and send same to potential expert Hopper at VerstaResearch" on 8/6/2015 for .2 hours at $565.00/hr;
3. Entry stating "Review materials re: potential survey expert" on 8/18/2015 for .4 hours at $565.00/hr;
4. Entry stating "Work with Angie K. Robertson and M. Eades at co-counsel's office" on 9/9/2015 for .3 hours at $575.00/hr;
5. Entry stating "review draft of same" on 9/23/2015 for .5 hours at $565.00/hr;

6. Entry stating "work on assembling materials" on 1/11/2016 for .2 hours at $565.00/hr;
7. Entry stating "research on LEXIS re: same" on 1/29/2016 for .4 hours at $565.00/hr;
8. Entry stating "revise and finalize" on 2/18/2016 for .5 hours at $565.00/hr;
9. Entry stating "Prepare for fairness hearing" on 2/24/2016 for 1 hour at $575.00/hr;
10. Entry stating "research re: same and revise same" on 3/4/2016 for 3.5 hours at $565.00/hr.

The Court finds these ten entries to lack sufficient detail for the Court to make a determination of whether or not they are reasonable. Additionally, the Court finds it proper to discount $230.00 for the entry stating "Prepare for and attend hearing on case management plan before J. LaRue" on 6/26/2015 for .4 hours at $575.00 per hour. This last entry appears to have been erroneously entered as there was no hearing before Magistrate Judge LaRue on that date.

Therefore, the Court finds it proper to further reduce the attorney fees by $4,428.00.

## C.  Mr. Castro's petition for attorney's fees in connection to the fees petition is only partially reasonable and thus the attorney's fees petition is appropriately adjusted.

The fees sought by Mr. Castro in connection with the fee petition are $18,835.00. The Defendants argue that the fees sought by Mr. Castro for the work done by Taft should be disallowed because the necessity of additional counsel for the fees petition was not shown. (Filing No. 64 at 22.) In support, the Defendants cite to an Eleventh Circuit case in which the court stated that "[t]hose attorneys who feel the need to hire counsel would be well-advised to raise the issue with the court prior to taking such action. Otherwise they run the risk that the trial court may determine that the necessities of the case did not justify retaining special fees counsel". *See Jonas v. Stack*, 758 F.2d 567, 569 (11th Cir. 1985). In this regard, the Defendants contend that Mr. Castro should have provided an explanation as to why Taft was necessary for the attorney's fees petition, or that prior court approval was required. (Filing No. 64 at 22.)

However, in *Jonas*, the court explicitly stated that obtaining the court's approval prior to hiring another law firm was not a requirement. *Jonas*, 758 F.2d at 569. Instead, the *Jonas* court explicitly stated that "[w]hether fee counsel's services are justified in a particular instance remains within the sound discretion of the trial court". *Id.* Given Taft's lower hourly rates, the Court finds that Mr. Castro's decision to have Taft's assistance is reasonable.

Next, Defendant argues that it is "exceptionally unreasonable that while Philipps & Philipps, Ltd. chose to engage outside counsel to purportedly represent it in fee litigation, it seeks reimbursement of $12,148.50 for work done in connection with the fee petition, in addition to the $6,686.50 sought by fee counsel." (Filing No. 64 at 22). The Court is persuaded by Defendants' argument. Having made the decision to hire outside counsel to litigate the fee petition, far less time and involvement from the Philipp's firm is appropriate. For example, members of the Philipps firm billed to research case law regarding hourly rates, and spent considerable time doing reviewing and analyzing drafts, despite having hired Taft for their expertise in this area[1]. In addition, Mr. Philipps' declaration in connection with the Joint Motion for Preliminary Settlement Approval (Filing No. 41-4) is nearly identical to his declaration in support of the fee petition (Filing No. 62-1), yet Mr. Philipps billed nearly six (6) hours for reviewing, researching and revising the declaration. (*See* Filing No. 62-2). The Court agrees that it is unreasonable that the Philipps firm utilized twenty-two (22) hours of work in connection with the fee petition, on top of the sixteen (16) hours performed by their outside counsel retained solely for the purpose of preparing and defending the fee petition[2]. The result of using two law firms to prepare and defend the fee petition

---

[1] Among the entries for research are billings from the Philipps firm for .5 hour on 1/29/2016 for "research case law re: same as evidence of hourly rates, review with Jeff dec. from 7th Cir.," and 3.5 hours on 3/4/2016 for "research re: same and revise same." (Filing No. 62-2 at 10, 12.)

[2] Compare Filing 64-20, Filing 71-1 at 8-10 and Filing No. 71-2 at 3-5.

has inflated the fee request for the Philipps firm to an unreasonable level. Recognizing that the Philipps firms' Supplemental Declaration of David J. Philipps (Filing No. 71-1) includes time related to distribution of the settlement fund; the Court finds that a reasonable attorney fee for the Philipps firm for their supplemental work in connection with the fee petition is $8,099.00 rather than the $12,148.50 sought, which represents a one-third discount for these particular services.

D.      **Mr. Castro is entitled to recover part of the additional costs incurred by his attorneys.**

Finally, the Defendants argue that some of the additional costs sought by Mr. Castro's attorneys are not recoverable. Specifically, the Defendants argue against a $250.00 charge for computer assisted research, $1,086.68 charge for travel expenses, and a $40.15 charge for a vague entry on the bill submitted by the Philipps firm. (Filing No. 64 at 25.) Because the Court has already decided that the travel expenses are recoverable, only the remaining charges will be examined.

To support the claim against the $250.00 computer assisted research charge, the Defendants cite to a Seventh Circuit decision that states that such charge cannot be recovered as cost. *See Haroco, Inc. v. American Nat. Bank & Trust, Co.*, 38 F.3d 1429, 1440-41 (7th Cir. 1994) (stating that computer research fees are to be considered attorney's fees and not recoverable as cost). The Court notes that the Philipps firm included the $250.00 computer assisted research charge as cost and not attorney's fees. Thus, the Court finds the charge unrecoverable and is subtracted from the total fees petition award. In regards to the $40.15 charge, the Court agrees with the Defendants that it is vague and will not approve the charge.

Therefore, the award of attorney's fees is to be further reduced by $290.15.

## IV.  CONCLUSION

For the aforementioned reasons, the Petition for Payment of Attorney's Fees by Mr. Castro ([Filing No. 62](#)) is **GRANTED in part** and **DENIED in part**.  The Court **GRANTS** Mr. Castro a total of $77,253.31 in attorney's fees and costs for the Philipps firm, and $27,783.00 for the Taft firm, for a total award of $105,036.31.  In this regard, the Court notes that Mr. Castro's request for the Philipps firm has been reduced by $1,514.00 for clerical work done by attorneys, $4,428.00 for vague entries on the billing statement, $4,049.50 for unreasonable attorney's fees in connection with the fees petition, and $290.15 for unallowable costs.

**SO ORDERED.**

Date: 9/19/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Joseph Shaw Messer
MESSER & STILP & STRICKLER LTD.
messer@messerstilp.com

Nicole Marie Strickler
MESSER & STILP & STRICKLER, LTD.
strickler@messerstilp.com

Stephanie A. Strickler
MESSER & STILP & STRICKLER, LTD.
sstrickler@messerstilp.com

Angie K. Robertson
PHILIPPS AND PHILIPPS, LTD.
angiekrobertson@aol.com

David J. Philipps
PHILIPPS AND PHILIPPS, LTD.
davephilipps@aol.com

Mary E. Philipps
PHILIPPS AND PHILIPPS, LTD.
mephilipps@aol.com

Michael D. Slodov
SESSIONS FISHMAN NATHAN & ISRAEL LLC
mslodov@sessions.legal

Samuel D. Hodson
TAFT STETTINIUS & HOLLISTER LLP
shodson@taftlaw.com

Tracy Nicole Betz
TAFT STETTINIUS & HOLLISTER LLP
tbetz@taftlaw.com